**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**
Caption in compliance with D.N.J. LBR 9004-2(c)

**PEPPER HAMILTON LLP**
(A Pennsylvania LLP)
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103
Tel.  215.981.4481
Fax  215.981.4750
Francis J. Lawall, Esq.
- and -
Suite 400
301 Carnegie Center
Princeton, NJ  08543-5276
Tel.  609.452.0808
Fax  609.452.1147
Robert L. Hickok, Esq.
Angelo A. Stio III, Esq.
Jeffrey A. Carr, Esq.
*Attorneys for Trustee, Edwin Stier, Esq.*

| | |
|---|---|
| In Re:<br>BIRDSALL SERVICES GROUP, INC., et al.,<br><br>Debtor. | Case No. : 13-16743 (MBK)<br><br>Judge:  Michael B. Kaplan |
| EDWIN STIER, ESQ., Trustee for the Estates of Birdsall Services Group, Inc. and BSG Engineering, Surveying, Landscape & Architecture LLC<br><br>Plaintiff,<br><br>v.<br><br>PHILIP ANGARONE, WILLIAM J. BARRON, HOWARD D. BIRDSALL, WILLIAM T. BIRDSALL, CLARE H. BRODERICK, DAVID EARECKSON, GERARD FREDA, ROBERT M. GERARD, MICHAEL J. GIULIANO, H. DANIEL HARRIS, JOHN HESS, ALAN P. HILLA, JAMES JOHNSTON, EILEEN KUHFAHL-SPEARS, SCOTT R. MACFADDEN, JOHN C. MORRIS III, RALPH J. ORLANDO, PAUL P. PANZARINO, THOMAS K. ROSPOS, DIANNE SEYMOUR, and JOHN L. WUESTNECK.<br><br>Defendants. | Chapter:  11<br><br>Hearing Date:<br><br>Adv. Proc. No. -<br><br><br>**ADVERSARY COMPLAINT** |

Plaintiff, Edwin Stier, the Trustee of the Estates of Birdsall Services Group, Inc. and BSG Engineering, Surveying, Landscape & Architecture LLC (collectively the "Estates"), by his undersigned counsel, brings this action against defendants, Philip Angarone, William J. Barron, Howard D. Birdsall, William T. Birdsall, Clare H. Broderick, Robert Collins, David Eareckson, Gerard Freda, Robert M. Gerard, Michael J. Guliano, H. Daniel Harris, John Hess, Alan P. Hilla, James Johnston, Eileen Kuhfahl-Spears, Scott R. MacFadden, John C. Morris III, Paul P. Panzarino, Thomas K. Rospos, Dianne Seymour, and John L. Wuestneck, (collectively the "Defendants") and in support thereof alleges as follows:

## INTRODUCTION

1.   This is an action brought on behalf of the Estates in order to recover substantial damages the Estates sustained as a result of the actions and/or inactions of former officers, directors, shareholders, members and employees of  Birdsall Services Group, Inc. ("BSG") and BSG Engineering, Surveying, Landscaping & Architecture LLC (the "LLC") (collectively BSG and the LLC are referred to as the "Companies").  The named Defendants either violated New Jersey law or failed to take reasonable steps to investigate and ensure that the Companies were in compliance with laws that govern the heart of their businesses.  The actions and/or inactions of the named Defendants have driven the Companies into bankruptcy and liquidation.  The Trustee, on behalf of the Estates, now brings this action to recoup the substantial damages that were proximately caused by the Defendants.

## THE PARTIES

2.       Plaintiff, Edwin Stier, Esq. is the Court appointed Trustee of the Estates in the jointly administered Chapter 11 actions captioned as In re Birdsall Services Group, Inc., et al. (Case No. - 13-16743) (the "Bankruptcy Cases").

3.      Defendant, Howard D. Birdsall ("H. Birdsall") is an individual who resides in Brielle, New Jersey.  H. Birdsall is the former President, Chief Executive Officer, and Board Chair of BSG.

4.      Defendant William T. Birdsall ("W. Birdsall") is an individual who resides in Manchester, New Jersey.  W. Birdsall is a Senior Vice President for and Board member of BSG.

5.      Defendant Thomas K. Rospos ("Rospos") is an individual residing in Belmar, New Jersey.  Mr. Rospos is a former Executive Vice President for and Board member of BSG.  Mr. Rospos also was the Board member that handled political contributions and was tasked with ensuring BSG's compliance with laws.

6.      Defendant Alan P. Hilla ("Hilla") is an individual residing in Brielle, New Jersey.  Upon information and belief, Mr. Hilla is a former Executive Vice President for Business Development and a Board member of BSG.

7.      Defendant Phil Angarone ("Angarone") is an individual who resides in Bordentown, New Jersey.  Mr. Angarone was the former Director of Marketing for BSG and the LLC.

8.      Defendant William J. Barron ("Barron") is an individual who resides in Tinton Falls, New Jersey.  Mr. Barron is the former Chief Financial Officer of BSG who oversaw the budgeting process, financial reporting functions, and audits for BSG and the LLC.

9.      Defendant Clare H. Broderick ("Broderick") is an individual residing in Rumson, New Jersey.  Broderick is a former Chief Operating Officer of the Building Systems Engineering division of and Board member for BSG.

10.     Defendant David Eareckson ("Eareckson") is an individual who resides in Brielle, New Jersey.  Mr. Eareckson is the former President of the Land & Marine Engineering Division of BSG.

11.     Defendant Gerald Freda ("Freda") is an individual who resides in Lincroft, New Jersey.  Mr. Freda is a former Executive Vice President of BSG.

12.      Defendant Michael J. Giuliano ("Giuliano") is an individual residing in Seaside Park, New Jersey.  Mr. Giuliano is a former Executive Vice President and Operating Officer of the Land Marine Engineering Division of BSG.

13.     Defendant Robert M. Gerard ("Gerard") is an individual residing in Wall, New Jersey.  Mr. Gerard is a former Chief Marketing Officer of and Board member for BSG.

14.     Defendant H. Daniel Harris ("Harris") is an individual residing in Spotsylvania, Virginia.  Mr. Harris is a former Chief Financial Officer, Board member and consultant for BSG.

15.     Defendant John Hess ("Hess") is an individual residing in Barnegat, New Jersey.  Mr. Hess is a former Senior Vice President of BSG.

16.     Defendant James Johnston ("Johnston") is an individual residing in North Brunswick, New Jersey.  Upon information and belief Mr. Johnston was the President of the Environmental Consulting Division of BSG.

17.     Defendant Eileen Kuhfahl-Spears ("Kuhfahl-Spears") is an individual residing in Bradley Beach, New Jersey.  Upon information and belief, Mrs. Kuhfahl-Spears is a former Marketing Manager for BSG.

18.     Defendant Scott R. MacFadden ("MacFadden") is an individual residing in Brick, New Jersey.  Upon information and belief Mr. MacFadden is a former Chief Administrative Officer of and Board Member for BSG.

19.     Defendant John C. Morris III ("Morris") is an individual residing in Colts Neck, New Jersey.  Upon information and belief, Mr. Morris is the former President of the Building Engineering Systems division and a Board member of BSG.

20.     Defendant Ralph J. Orlando ("Orlando") is an individual residing in Long Branch, New Jersey.  Upon information and belief, since approximately March of 2010 Mr. Orlando has served in various capacities at BSG including: an Executive Vice President, a Board Member, and the President and Chief Executive Officer.  Mr. Orlando also was a member of the LLC.

21.     Defendant Paul P. Panzarino ("Panzarino") is an individual residing in Watchung, New Jersey.  Upon information and belief, Mr. Panzarino was a former Executive Vice President and Board member of BSG.

22.     Defendant Dianne Seymour ("Seymour") is an individual residing in Jackson, New Jersey.  Upon information and belief, Ms. Seymour is a former Director of MIS for and the Corporate Treasurer and Secretary for BSG.

23.     Defendant John L. Wuestneck ("Wuestneck") is an individual residing in Manasquan, New Jersey.  Upon information and belief Mr. Wuestneck is a former Chief Operating Officer of and a Board Member of BSG.  Mr. Wuestneck also was a member of the LLC.

24.     Defendants H. Birdsall, W. Birdsall,  Gerard, Hilla,  Johnston,  MacFadden, Angarone, Kuhfahl-Spears and Rospos have either been indicted by the State of New Jersey or plead guilty as part of plea agreements to violations of the New Jersey Pay-To-Play Act (collectively these individuals are referred to herein as the "Indicted Defendants").  Defendants Morris, Panzarino, Borderick, Wuestneck, Baron, Seymour, Harris, Giuliano, Orlando, Hess,

Eareckson and Freda were not indicted by the State of New Jersey (the "Unindicted

Defendants").

## JURISDICTION AND VENUE

25.     This Court has personal jurisdiction over Defendants because they reside

in the State of New Jersey and/or are former officers, directors and employees of BGS, which

maintained a place of business and conducted business in the State of New Jersey.  In addition,

the events, acts, and occurrences giving rise to this causes of action in this Complaint occurred

substantially within the State of New Jersey.

26.     This is an Adversary Proceeding pursuant to Fed. R. Bank. P. 7001.

27.     This Court has jurisdiction over this Adversary Proceeding pursuant to 28

U.S.C. §§ 1334(b) and 157.

28.      This civil action arises in and relates to the Bankruptcy Cases of Birdsall

Services Group, Inc., and BSG Engineering, Surveying & Landscape Architect, LLC,

Consolidated Case No.: 13-16743(MBK).

29.     This is a "core" proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (E) and

(O), however, if the Court finds this is a non-core proceeding, Plaintiff consents to the entry of

final orders or judgment by the Bankruptcy Court.

30.     Venue is properly fixed in this Court pursuant to 28 U.S.C. §1409(a).

## FACTUAL BACKGROUND

### A.     History of the Corporation and the LLC

31.     BSG is a New Jersey corporation that has its genesis in an entity known as

Birdsall Engineering, Inc. ("BEI").  BEI was founded in 1919 by the grandfather of H. Birdsall

and W. Birdsall and for many years BEI focused on providing public engineering and consulting

services to municipalities, public authorities, counties, and government agencies.

32.     Over the years BEI began to grow and expand the scope of its services by acquiring other engineering firms.

33.     In 1996,  BEI acquired Lynch, Giuliano & Associates ("LGA"), which was an entity that provided engineering and surveying services to residential and commercial developers and industrial clients.

34.     In or around 1997,  BEI acquired Johnson and Associates, which was an entity that provided mechanical, electrical, and plumbing systems, and later BEI acquired John C. Morris Associates, an entity that specialized in heating, ventilation, air conditioning, electrical, plumbing, fire protection, information technology, and building automation systems.

35.     In 1999, BEI acquired Di Stasio and Van Buren, which was an entity that provided structural design services.

36.     In or about 2002, BEI's shareholders decided to put all the acquired entities under the umbrella of a holding company, so they created BSG.  Each of the acquired entities, along with BEI, formed the various divisions within BSG.

37.     These divisions included:

 a.   public engineering (formerly BEI),

 b.   private and development (formerly LGA),

 c.   vertical and structural engineering (formerly Di Stasio and Van Buren), and

 d.   mechanical, electrical and plumbing engineering (formerly Johnson and Associates and John C. Morris Associates).

38.     In 2008,  BSG acquired the PMK Group, which was an entity that provided energy, environmental engineering and consulting services to public and private clients. The acquisition of PMK was desirable because it not only enabled BSG to provide energy and

environmental engineering services, but PMK was well-known for its organized and extensive marketing department, which would substantially enhance BSG's marketing efforts.

39.     After its acquisition, PMK became the energy and environmental division of BSG.

40.     In 2010, BSG grew further by acquiring certain assets of CMX/Schoor DePalma and CMX NY, Inc.  CMX NY, Inc. was ultimately turned into the LLC, which was a New York limited liability company formed by BSG to perform engineering services in the State of New York.

41.     CMX/Schoor DePalma, in its heyday, was one of the State's largest engineering firms.  It dealt with its own issues when one of its principals was alleged to have bribed a public official in Ocean County, New Jersey.

42.     With all its acquisitions and the expansion of its services, by March 2013 BSG had grown to one of the largest engineering firms in the State of New Jersey, with a value of approximately $41.8 million.

43.     As of March 2013, approximately 47% of BSG's revenues came from work it performed for municipalities, counties and the State of New Jersey.

**B.**      **BSG's Reliance on Political Contributions.**

44.     Because of the amount of public contract work that it performed, BSG and its officers and directors routinely attended political events and made political contributions to market itself.

45.     Not only did BSG make donations to political candidates and attend political events in its own name, but at all relevant times, certain employees within BSG and the LLC were asked to contribute to political candidates and attend political events as well.

46.     By way of example, when LGA engineers first joined BEI back in 1996, they were approached by Rospos and Hilla at various times and asked to write individual checks to support candidates running from state and federal office.

47.     Upon information and belief, Rospos and Hilla advised the individuals who they solicited for checks that the donations were lawful and it was necessary to obtain business in the State of New Jersey.

48.     Certain individual engineers who worked for BEI and later BSG, were told what event to attend, and/or what candidate to support and/or the amount of the check to write.

49.     Certain individual engineers continued to write checks to support individual candidates after BSG was formed in 2002 and this practice continued even after the Pay-to-Play Law was enacted in 2004.

### C.       The New Jersey Pay-to-Play Law

50.     New Jersey State and Local "Pay-to-Play Regulations" are laws that regulate how government agencies award contracts for goods and services by seeking to establish a fair and transparent process for obtaining public work.

51.     The Pay-to-Play Regulations prohibit the state or its purchasing entities from entering into contracts where the value of the goods or services exceeds $17,500, with any business entity that has solicited, made, or pledged to make any political contributions to a candidate committee or election fund of any gubernatorial candidate or to any state or county party committee.

52.     In addition to precluding the award of certain government contracts to entities that made political contributions, the Pay-to-Play Regulations prohibit corporations from reimbursing employees through salary, bonus or monetary remuneration for paying or making a political contribution.

53.    The Pay-to-Play Regulations and Election Law Enforcement Commission

Regulations require both businesses and candidates to disclose to the New Jersey Election Law

Enforcement Commission ("ELEC") all donations that are in excess of $300.

### D.    The New Jersey Campaign Contributions and Expenditures Reporting Law

54.    New Jersey State Campaign Contributions and Expenditures Reporting laws

prohibit corporations from providing its officers, directors or other employees any additional

salary, bonus or monetary remuneration for the express purpose of making contributions to a

political candidate, party or committee.

55.    New Jersey State Campaign Contributions and Expenditures Reporting laws

also prohibit any person from purposely concealing or misrepresenting contributions given  in

support of the nomination, election or defeat of any candidate for public office.

### E.    Efforts to Comply with the Applicable Law

56.    Despite being one of the largest engineering firms in the State of New

Jersey, neither BSG nor the LLC had an effective compliance committee or officer within the

organization to ensure that activities were being conducted in compliance with applicable New

Jersey laws and regulations.

57.    At no time prior to May 2012, did the officers or directors of BSG or the

members of the LLC effectively solicit from employees the amount of annual individual political

contributions that they were making in order to comply with disclosure obligations provided for

in the Pay-to-Play Law and ELEC regulations.

58.    Nor did the officers or directors of BSG or the members of the LLC issue

certifications to affirm that they did not make any individual political contributions that would

implicate the New Jersey Pay-to-Play Law, ELEC regulations or New Jersey Campaign

Contributions and Expenditures Reporting laws.

59.      Instead of implementing reasonable mechanisms to ensure compliance with laws and regulations, the officers and directors of BSG and/or the members of the LLC tasked Rospos with this responsibility at or about the time the Pay-to-Play Law was enacted in 2004, and then failed to monitor the effectiveness of his efforts in carrying out that task.

60.      The officers and directors of BSG and/or members of the LLC tasked Rospos with this responsibility even though virtually all of Rospos' engineering work came from the public sector and even though Rospos had the most to gain by finding ways around the Pay-to-Play Law and Campaign Contributions and Expenditures Reporting laws in order to obtain public contract work.

61.      After the Pay-to-Play Law went into effect, at various times Rospos assured officers, directors and employees of BSG and/or members of the LLC that he obtained a legal opinion from a reputable New Jersey law firm and that the individual political contributions and reimbursements being made were in compliance with the Pay-to-Play Law and the ELEC regulations.

62.      Upon information and belief, no officer, director or employee of BSG or member of the LLC required Rospos to provide a copy of the legal opinion.

63.      In 2008, after PMK and the PMK marketing department were integrated into BSG, Rospos formalized the way campaign contributions were made by establishing a group consisting of himself, Angarone, Freda, Hilla, and Kuhfahl-Spears.  This group would meet regularly to select campaigns or political organizations that they would support financially.  The group referred to their meetings as "Corporation Compliance" meetings, and the defendants who participated in these "Corporation Compliance" meetings are referred to collectively as the "Corporation Compliance Defendants."

64.      Upon information and belief, no minutes were taken of the purported "Corporation Compliance" meetings and no officer or director of BSG or member of the LLC ever asked to see copies of meeting minutes to understand the purpose of the "Corporation Compliance" meetings.

**F.      The Solicitation of Individual Political Contributions**

65.      Once the Corporation Compliance Defendants decided what political entities and/or candidates should be financially supported, Angarone and Rospos decided the number and the amount of checks that would be written.

66.      Some of the Indicted Defendants would then solicit checks from individual directors, officers and employees of BSG and the LLC.

67.      After the Pay-to-Play Law went into effect, officers, directors and employees were asked to write personal checks for political donations in the amount of $299.

68.      Upon information and belief, officers, directors and employees were asked to write personal checks in the amount of $299 because this amount was not reportable to ELEC and by writing checks in this amount BSG and the LLC could make political contributions without opposing candidates and/or opposing political organizations knowing who BSG was supporting.

69.      Despite being in a profession that requires diligence and precision, no officer or director of BSG or any member of the LLC examined the Pay-to-Play Law or ELEC regulations to confirm the rationale for being asked to make personal political contributions in the amount of $299.

**G.      The O & D Bonuses**

70.       In addition to not questioning the rationale for requesting personal political donations in the amount of $299, no officer or director of BSG or any member of the

LLC examined the Pay-to-Play Law or ELEC regulations to determine if it was permissible for them to be reimbursed by the Companies for making such donations.

71.     Nevertheless, Rospos, Angarone and an administrative assistant, Patricia Lowthorp, would keep track of the personal political contributions made by officers, directors and employees on an annual basis and then arrange for these individuals to be reimbursed through an Officers & Directors bonus pool (the "O & D bonus pool").

72.     This O & D bonus pool was a specific line item found in the annual budget of the Corporate Marketing Department.

73.     The O & D bonus pool was separate and apart from BSG's and/or the LLC's annual merit bonus pool and distributions were made from it in June or July of each calendar year.

74.     Merit bonuses awarded by BSG and/or the LLC were typically distributed at year-end.

75.     The annual budget for O & D bonus pool was determined by Rospos and from 2006 through 2012 ranged from between $500,000 and $600,000 per year.

76.     The O & D bonus pool line item on the corporate budget represented one of the top five expenses of BSG.

77.     Because of its size, various officers and directors involved in the budget process questioned the O & D bonus pool budget and asked about reducing the amount.

78.     Rospos, however, refused to allow the annual budget for the O & D bonus pool to be reduced.  Rospos represented that it was for extraordinary efforts of officers and directors of the Companies.

79.     Upon information and belief, no Unindicted Defendant became informed on how O & D bonuses were determined, why a separate bonus pool was necessary, or why the bonus pool was part of the Marketing Department budget.

80.     To make matters worse, upon information and belief, BSG's Board of Directors never approved the O & D bonuses that were being issued.

81.     This lack of proper examination and authorization of the O & D bonus pool by officers and directors of BSG, including those directly involved in the annual budgeting process, was unreasonable.  This is particularly true when (a) BSG already had a merit bonus pool (separate and apart from the O & D bonus pool) that was available to reward officers and directors, and (b) it was rumored among BSG employees that the O & D bonus pool was being used to reimburse officers, directors and employees for individual political contributions.

### H.     Reimbursement through the O & D Bonus Pool

82.     After collecting personal political contribution checks, Angarone provided the total contributions from each individual check writer to Rospos.

83.     On an annual basis, Rospos considered the amount of each individual's contributions to come up with an O & D bonus amount.

84.     Prior to 2008, Rospos would give the Controller of BSG his hand-written notations about the amount of O & D bonuses and the Controller would gross-up the numbers to account for taxes and withholdings.  This would ensure that the individual contributors were reimbursed in full for their political contributions.

85.     After 2008, the former Controller of BSG became BSG's Director of Management Information Systems, yet that individual retained the function of grossing up the O & D bonuses to reimburse in full the individual contributors for their political contributions.

86.     No officer or director of BSG questioned or looked into why Rospos was using someone in the information technology department to perform a bonus calculation function that should have been the responsibility of the finance or accounting department.

I.      **The Amounts of the Personal Contributions that were Reimbursed.**

87.     At various times throughout the existence of BSG and the LLC the Indicted Defendants wrote personal checks to support political candidates or political organizations and were reimbursed for the contributions that were made.  In addition, some of the Unindicted Defendants and other BSG employees were persuaded by Rospos, Hilla and/or Angarone to (a) write personal checks to support political candidates or political organizations and (b) receive reimbursement for the contributions.  Collectively, the Indicted Defendants and Unindicted Defendants that made personal contributions to political candidates and political organizations and received reimbursement for the contributions are referred to as the "Check Writing Defendants."

88.     Upon information and belief, from 2008 through early 2012 alone, the Check Writing Defendants made more than 1,000 personal contributions worth at least $1.05 million to campaigns or political organizations in the State of New Jersey and they were reimbursed for these contributions through the O & D Bonus Pool.  None of these personal contributions were reported to ELEC based on Rospos' assurances that BSG was in compliance with the Pay-to-Play Law and ELEC regulations.

89.     Of the approximately $1.05 million in personal contributions, $549,487 went to Republicans, $445,650 to Democrats and $58,400 to independents, nonpartisan candidates, unaffiliated political groups and nonprofit organizations.

### J.      The State's Investigation of BSG and the Indictment

90.      In 2011, the Attorney General for the State of New Jersey initiated an investigation into BSG's affairs after Angarone's estranged wife disclosed to the Attorney General's office that the annual O & D bonuses her husband had received from BSG were for reimbursement of personal political contributions that he made.

91.      On November 30, 2012, defendant Angarone entered into a plea agreement where he pled guilty to a third-degree crime of tampering with public records and a fourth degree crime of making prohibited campaign contributions.

92.      On February 13, 2013, defendant Kuhfahl-Spears reached a plea deal where she agreed to cooperate with the State's investigation and pled guilty to a fourth degree crime of making prohibited political contributions.

93.      On March 26, 2013, the State Grand Jury returned Indictment Number SGJ632-13-26-S (the "Indictment"), that contained nine criminal counts against BSG,  H. Birdsall, W. Birdsall,  Gerard, Hilla,  Johnston,  MacFadden, and Rospos.

94.      The Indictment was based on  criminal acts on the part of H. Birdsall, W. Birdsall,  Gerard, Hilla,  Johnston,  MacFadden, and Rospos including allegations that these individuals had engaged in: money laundering; false representation for a government contract; misconduct by a corporate official; tampering with public records or information; corporate contributions through employees; concealment or misrepresentation of contributions; and conspiracy to commit the aforementioned crimes.

95.      To date, H. Birdsall, W. Birdsall,  Gerard, Hilla,  Johnston,  MacFadden, and Rospos have not been convicted of any crimes contained in the Indictment.

96.      In conjunction with the Indictment, the State of New Jersey also commenced a civil forfeiture action against BSG and seized $41.6 million of its assets, including $5.4 million in cash.

97.      Following the Indictment, officials in municipalities through New Jersey and New York scrambled to cut ties with BSG and the LLC by, among other things, terminating their contracts with BSG and the LLC.

98.      As a result of the Indictment and the civil forfeiture action BSG received a large volume of contract termination letters from clients, on March 29, 2013, BSG and the LLC filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code.

99.      At the time of the bankruptcy filing, BSG identified that it had $29.4 million in liabilities.

**K.      BSG's Settlement and Eventual Sale**

100.      In a court approved settlement, the Trustee settled the civil forfeiture action with the State of New Jersey for $2.6 million; $2.5 million in forfeiture and $100,000 to cover counsel fees.

101.      The Trustee also caused the BSG Estate to set up a $1 million fund dedicated to paying any fines, penalties and restitution that arose from the Indictment.

102.      In addition to the settlement, the bankruptcy court authorized the sale of BSG to another engineering firm following a court approved auction process.

103.      On June 5, 2013, BSG was sold for an unadjusted base purchase price of $5.6 million to the only bidder that submitted a bid as part of the auction process.

104.      The sale of BSG included accounts receivable, physical assets, select contracts, existing project files, select intellectual property and license agreements.

105.    The unadjusted base price of $5.6 million stands in stark contrast to the $41.8 million enterprise value that the Board of Directors determined to be the value of the company as of December 31, 2011, based on the valuation report prepared by an investment banking firm.

**COUNT ONE**
**Plaintiff v. Indicted Defendants**
**(Breach of Fiduciary Duty – Duty of Good Faith)**

106.    Plaintiff incorporates the allegations contained in all preceding paragraphs as if fully set forth at length herein.

107.    Each Indicted Defendant as either an officer, director or senior level employee of BSG and/or member of the LLC was a fiduciary that was required to discharge his or her duties in good faith.

108.    Each Indicted Defendant either participated in, failed to uncover, or failed to disclose a scheme to violate New Jersey Law.

109.    In so acting or failing to act, each Indicted Defendant failed to discharge his or her fiduciary duties to act in good faith and in the best interests of BSG and the LLC.

110.    By breaching their duties of good faith, the Indicted Defendants caused substantial damage to BSG and the LLC, which led to the demise of both these organizations.

111.    Each Indicted Defendant is jointly and severally liable for the damages that were caused.

WHEREFORE, Plaintiff, Edwin Stier, Esq., the Trustee of the Estates respectfully requests that the Court enter judgment in its favor and against the Indicted Defendants in an amount to be determined at trial, attorneys' fees and expenses, court costs and such other and further relief as the Court deems just and proper under the circumstances.

## COUNT TWO
### Plaintiff v. Indicted Defendants
### (Breach of Fiduciary Duty – Duty of Care)

112.    Plaintiff incorporates the allegations contained in all preceding paragraphs as if fully set forth at length herein.

113.    Each Indicted Defendant, as either an officer, director or senior level employee of BSG and/or member of the LLC, was a fiduciary that was required to exercise due care in the management, operation and supervision of the affairs of BSG and/or the LLC.

114.    The duties of due care that the Indicted Defendants were required to exercise included:

      a.  the duty to become fully informed about laws that govern the business of the organization,

      b.  the duty to put in place mechanisms to ensure the organizations were in compliance with applicable laws,

      c.  the duty to become fully informed about the O & D bonuses, how they were determined, and why they were awarded.

115.    Each Indicted Defendant either participated in, failed to uncover, or failed to disclose a scheme to violate New Jersey's Pay-to-Play Law or the ELEC regulations.

116.    Each Indicted Defendant failed to ensure that BSG and/or the LLC had any effective compliance program in place to ensure the organizations complied with, among other things, New Jersey's Pay-to-Play Law and the ELEC regulations.

117.    Each Indicted Defendant failed to become fully informed about New Jersey's Pay-to-Play Law and the ELEC regulations to determine if the organizations were in compliance with these important laws which impacted approximately 47% of the organizations' business.

118.    Each Indicted Defendant (except Angarone and Rospos) failed to become fully informed about the O & D bonuses, how they were determined and why they were awarded.

119.    In so acting or failing to act, each Indicted Defendant failed to exercise his or her duties with due care.

120.    By failing to exercise their duties with due care, the Indicted Defendants caused substantial damage to BSG and the LLC, which led to the demise of both these organizations.

121.    Each Indicted Defendant is jointly and severally liable for the damages that were caused.

WHEREFORE, Plaintiff, Edwin Stier, Esq., the Trustee of the Estates respectfully requests that the Court enter judgment in its favor and against the Indicted Defendants in an amount to be determined at trial, plus interest, attorneys' fees and expenses, court costs and such other and further relief as the Court deems just and proper under the circumstances.

## COUNT THREE
### Plaintiff v. Unindicted Defendants
### (Breach of Fiduciary Duty – Duty of Good Faith)

122.    Plaintiff incorporates the allegations contained in all preceding paragraphs as if fully set forth at length herein.

123.    Each Unindicted Defendant was either an officer, director or senior level employee of BSG and/or a member of the LLC and had a fiduciary that required them to discharge their duties in good faith.

124.    Each Unindicted Defendant either participated in, failed to uncover, or failed to disclose a scheme to violate New Jersey Law.

125.    In so acting or failing to act, each Indicted Defendant failed to discharge his or her fiduciary duties to act in good faith and in the best interests of BSG and the LLC.

126.    By breaching their duties of good faith, the Unindicted Defendants caused substantial damage to BSG and the LLC, which led to the demise of both these organizations.

127.    Each Unindicted Defendant is jointly and severally liable for the damages that were caused.

WHEREFORE, Plaintiff, Edwin Stier, Esq., the Trustee of the Estates respectfully requests that the Court enter judgment in its favor and against the Unindicted Defendants in an amount to be determined at trial, attorneys' fees and expenses, court costs and such other and further relief as the Court deems just and proper under the circumstances.

## COUNT FOUR
### Plaintiff v. Unindicted Defendants
### (Breach of Fiduciary Duty – Duty of Care)

128.    Plaintiff incorporates the allegations contained in all preceding paragraphs as if fully set forth at length herein.

129.    Each Unindicted Defendant, as either an officer, director or senior level employee of BSG and/or member of the LLC, was a fiduciary that was required to exercise due care in the management, operation and supervision of the affairs of BSG and/or the LLC.

130.    The duties of due care that the Unindicted Defendants were required to exercise included:

      a.  the duty to become fully informed about laws that govern the business of the organization,

      b.  the duty to put in place mechanisms to ensure the organizations were in compliance with applicable laws,

     c.  the duty to become fully informed about the O & D bonuses, how

they were determined, and why they were awarded.

131.    Each Unindicted Defendant either participated in, failed to uncover, or

failed to disclose a scheme to violate New Jersey's Pay-to-Play Law or the ELEC regulations.

132.    Each Unindicted Defendant failed to ensure that BSG and/or the LLC had

any effective compliance program in place to ensure the organizations complied with, among

other things, New Jersey's Pay-to-Play Law and the ELEC regulations.

133.    Each Unindicted Defendant failed to become fully informed about New

Jersey's Pay-to-Play Law and the ELEC regulations to determine if the organizations were in

compliance with these important laws which impacted approximately 45% of the organizations'

business.

134.    Each Unindicted Defendant (except Angarone and Rospos) failed to

become fully informed about the O & D bonuses, how they were determined and why they were

awarded.

135.    In so acting or failing to act, each Unindicted Defendant failed to exercise

his or her duties with due care.

136.    By failing to exercise their duties with due care, the Unindicted

Defendants caused substantial damage to BSG and the LLC, which led to the demise of both

these organizations.

137.    Each Unindicted Defendant is jointly and severally liable for the damages

that were caused.

WHEREFORE, Plaintiff, Edwin Stier, Esq., the Trustee of the Estates respectfully

requests that the Court enter judgment in its favor and against the Unindicted Defendants in an

amount to be determined at trial, plus interest, attorneys' fees and expenses, court costs and such

other and further relief as the Court deems just and proper under the circumstances.

## COUNT FIVE
**Plaintiff v. Indicted Defendants**
**(Aiding and Abetting Breach of Fiduciary Duty)**

138.    Plaintiff incorporates the allegations contained in all preceding paragraphs

as if fully set forth at length herein.

139.    To the extent certain Indicted Defendants neither owed nor breached

fiduciary duties to BSG and the LLC, they assisted, aided and/or abetted other Indicted

Defendants in breaching their fiduciary duties of loyalty, good faith and care that were owed to

BSG or the LLC.

140.    By failing to exercise their duties with due care, the Indicted Defendants

caused substantial damage to BSG and the LLC, which led to the demise of both these

organizations.

141.    Each Indicted Defendant is jointly and severally liable for the damages

that were caused.

WHEREFORE, Plaintiff, Edwin Stier, Esq., the Trustee of the Estates

respectfully requests that the Court enter judgment in its favor and against Indicted Defendants

and Unindicted Defendants in the amount to be determined at trial, plus interest, attorneys' fees

and expenses, court costs and such other and further relief as the Court deems just and proper

under the circumstances.

## COUNT SIX
**Plaintiff v. All Defendants**
**(Negligence)**

142.    Plaintiff incorporates the allegations contained in all preceding paragraphs

as if fully set forth at length herein.

143.    Each Defendant, as an officer, director, member and/or employee of BSG or the LLC had a duty to take reasonable precautions to prevent foreseeable harm to the Company.

144.    Each Defendant, as either an officer or director of BSG and/or member of the LLC, either negligently participated in, failed to uncover, or failed to disclose a scheme to violate New Jersey's Pay-to-Play Law or the ELEC regulations.

145.    Each Defendant, as either an officer or director of BSG and/or member of the LLC failed to ensure that BSG and/or the LLC had any compliance program in place to ensure the organizations complied with, among other things, New Jersey's Pay-to-Play Law and the ELEC regulations.

146.    Each Defendant, as either an officer or director of BSG and/or member of the LLC, failed to become fully informed about New Jersey's Pay-to-Play Law and the ELEC regulations to determine if the organizations were in compliance with these important laws which impacted approximately 45% of the organizations' business.

147.    Each Defendant (except Angarone and Rospos), as either an officer or director of BSG and/or member of the LLC, failed to become fully informed about the O & D bonuses, how they were determined and why they were awarded.

148.    Each Defendant, as either an officer or director of BSG and/or member of the LLC, failed to ensure that BSG and/or the LLC had any compliance program in place to ensure the organizations complied with, among other things, New Jersey's Pay-to-Play Law.

149.    Each Defendant, as either an officer or director of BSG and/or member of the LLC failed to become fully informed about New Jersey's Pay-to-Play Law to determine if the organization was in compliance with this important law which impacted approximately 47% of the organizations' business.

150.    In so doing, each Defendant failed to take reasonable precautions to prevent foreseeable harm to the Company.

151.    By failing to exercise duties owed to BSG and the LLC, the Defendants caused substantial damage to BSG and the LLC, which led to the demise of both these organizations.

152.    Each Defendant is jointly and severally liable for the damages that were caused.

WHEREFORE, Plaintiff, Edwin Stier, Esq., the Trustee of the Estates respectfully requests that the Court enter judgment in its favor and against Defendants in an amount to be determined at trial, plus interest, attorneys' fees and expenses, court costs and such other and further relief as the Court deems just and proper under the circumstances.

## COUNT SEVEN
### Plaintiff v. Indicted Defendants
### (Civil Conspiracy)

153.    Plaintiff incorporates the allegations contained in all preceding paragraphs as if fully set forth at length herein.

154.    Upon information and belief, certain Indicted Defendants agreed to act in concert to make secret and unlawful political donations from corporate funds.

155.    Upon information and belief, certain Indicted Defendants understood and accepted the objectives of the scheme to violate the New Jersey Pay-to-Play Law and ELEC regulations.

156.    Upon information and belief, certain Indicted Defendants performed acts in furtherance of the unlawful scheme.

157.    By engaging in this civil conspiracy, certain Indicted Defendants caused BSG's and the LLC's bankruptcy, which resulted in substantial damage in an amount to be determined at trial.

158.    Certain Indicted Defendants are jointly and severally liable for the damages that were caused.

WHEREFORE, Plaintiff, Edwin Stier, Esq., the Trustee of the Estates respectfully requests that the Court enter judgment in its favor and against the Indicted Defendants in an amount to be determined at trial plus interest, attorneys' fees and expenses, court costs and such other and further relief as the Court deems just and proper under the circumstances.

## COUNT EIGHT
### Plaintiff v. Rospos
### (Fraud)

159.    Plaintiff incorporates the allegations contained in all preceding paragraphs as if fully set forth at length herein.

160.    Upon information and belief, at various points in time between 2006 and 2012, Rospos defrauded BSG by making material misrepresentations of fact to the Unindicted Defendants, in their capacities as officers, directors or senior level employees, of BSG, that the personal political contributions that they were making and the O & D bonuses they were receiving were in compliance with New Jersey law.

161.    Upon information and belief, Rospos further defrauded BSG by making material misrepresentations of fact to the Unindicted Defendants, in their capacities as officers, directors or senior level employees of BSG, that he had a legal opinion from a reputable law firm that opined on the lawfulness of the political contribution scheme he organized.

162.    Upon information and belief, at the time Rospos made these representations he knew or should have known that they were false.

163.    Upon information and belief, at the time Rospos made these representations he intended that the Unindicted Defendants, in their capacities as officers, directors or senior level employees of BSG, would rely upon them, make personal political contributions and not question whether BSG was complying with the Pay-to-Play Law and the ELEC Regulations.

164.    The Unindicted Defendants relied upon Rospos' representations.

165.    As a result of relying on Rospos' representations, BSG has suffered damages.

WHEREFORE, Plaintiff, Edwin Stier, Esq., the Trustee of the Estates respectfully requests that the Court enter judgment in its favor and against Rospos in an amount to be determined at trial plus interest, attorneys' fees and expenses, court costs and such other and further relief as the Court deems just and proper under the circumstances.

## COUNT NINE
### Plaintiff v. Rospos
### (Negligent Misrepresentation)

166.    Plaintiff incorporates the allegations contained in all preceding paragraphs as if fully set forth at length herein.

167.    As the BSG Board Member charged with ensuring BSG's compliance with the Pay-to-Play Law and the ELEC Regulations, Rospos had a duty to understand the law and regulations, and establish mechanisms for effective compliance with the law and regulations for BSG.

168.    Upon information and belief, Rospos breached this duty he owed to BSG by negligently misrepresenting to the Unindicted Defendants, in their capacities as officers, directors and senior level employees of BSG, that the personal political contributions that they

were making and the O & D bonuses they were receiving were in compliance with New Jersey law.

169.    Upon information and belief, Rospos further breached this duty he owed to BSG by negligently misrepresenting to the Unindicted Defendants, in their capacities as officers, directors and senior level employees of BSG, that he had a legal opinion from a reputable law firm that opined on the lawfulness of the political contributions that were being made and the reimbursements that they were receiving.

170.    Upon information and belief, at the time Rospos made these representations he knew or should have known that they were false and Rospos was negligent in making them.

171.    The Unindicted Defendants relied upon Rospos' negligent misrepresentations and failed to take reasonable steps to ensure BSG's compliance with the New Jersey Pay-to-Play Law and the ELEC regulations.

172.    As a result of relying on Rospos' negligent misrepresentations, BSG has suffered damages.

WHEREFORE, Plaintiff, Edwin Stier, Esq., the Trustee of the Estates respectfully requests that the Court enter judgment in its favor and against Rospos in an amount to be determined at trial plus interest, attorneys' fees and expenses, court costs and such other and further relief as the Court deems just and proper under the circumstances.

/s/ Francis J. Lawall
Francis J. Lawall, Esq.
Pepper Hamilton LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103
Tel.  215.981.4481
Fax  215.981.4750
E-mail: lawallf@pepperlaw.com

- and -

Robert L. Hickok
Angelo A. Stio III
Jeffrey A. Carr
Pepper Hamilton LLP
Suite 400
301 Carnegie Center
Princeton, NJ  08543
Tel.  609.452.0808
Fax  609.452.1147

*Attorneys for Edwin Stier, Esq., Trustee for the Estates
of Birdsall Services Group, Inc. and BSG Engineering,
Surveying, Landscape & Architecture LLC*